UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD EARL GEORGE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>D. URIBE, et al.,<br><br>　　　　　Defendants. | Civil No. 11cv70 JLS(RBB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL [ECF NO. 33]** |

　　Plaintiff Richard Earl George, a state prisoner currently incarcerated at Salinas Valley State Prison, and proceeding pro se and in forma pauperis, filed a civil rights complaint on January 12, 2011, pursuant to 42 U.S.C. § 1983 [ECF No. 1].  On March 21, 2011, United States District Judge Janis L. Sammartino dismissed Plaintiff's Complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and gave him leave to file an amended complaint [ECF No. 3].  Plaintiff timely filed a First Amended Complaint against the Warden and various correctional officers at Centinela State Prison ("Centinela"), alleging his Constitutional rights were violated

when he was attacked by another inmate on January 8, 2010, while housed at Centinela. (First Am. Compl. 3,[1] ECF No. 5.) On August 5, 2011, Defendants filed a Motion to Dismiss the First Amended Complaint [ECF No. 23]. On September 1, 2011, Plaintiff George filed his Response in Opposition to Defendants' Motion to Dismiss [ECF No. 26]. Shortly thereafter, he filed a Supplemental Response in Opposition to Defendants' Motion to Dismiss [ECF No. 29].

While Defendants' Motion to Dismiss was pending, Plaintiff's Motion for Appointment of Counsel in this case was filed nunc pro tunc to December 30, 2011 [ECF No. 33]. The Court will consider the allegations raised in the First Amended Complaint when deciding whether to grant Plaintiff's request for counsel. Rhodes v. Robinson, 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, '[t]he amended complaint supercedes the original, the latter being treated thereafter as non-existent.'") (quoting Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967)). In support of his request for the appointment of counsel, Plaintiff asserts the following: (1) He is unable to afford an attorney; (2) his imprisonment limits his ability to litigate; (3) he has limited education and no training in law; and (4) the issues in this case are complex and beyond his understanding. (Mot. Appointment Counsel 2-5, ECF No. 33.)

"The court may request an attorney to represent any person unable to afford counsel." 28 U.S.C.A. § 1915(e)(1) (West 2006). But "it is well-established that there is generally no constitutional right to counsel in civil cases." United States v.

---

[1] Because the First Amended Complaint is not consecutively paginated, the Court will cite to the document using the page numbers assigned by the Court's electronic case filing system.

Sardone, 94 F.3d 1233, 1236 (9th Cir. 1996) (citations omitted). There is also no constitutional right to appointed counsel to pursue a § 1983 claim. Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997) (citing Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981)); accord Campbell v. Burt, 141 F.3d 927, 931 (9th Cir. 1998). Federal courts do not have the authority "to make coercive appointments of counsel." Mallard v. United States Dist. Court, 490 U.S. 296, 310 (1989) (discussing § 1915(d)); see also United States v. $292,888.04 in U.S. Currency, 54 F.3d 564, 569 (9th Cir. 1995).

Nevertheless, district courts have discretion, pursuant to 28 U.S.C. § 1915(e)(1), to request attorney representation for indigent civil litigants upon a showing of exceptional circumstances. See Agyeman v. Corr. Corp. of Am., 390 F.3d 1101, 1103 (9th Cir. 2004) (citing Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir. 1984)). "A finding of the exceptional circumstances of the plaintiff seeking assistance requires at least an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" Agyeman, 390 F.3d at 1103 (quoting Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986)). "'Neither of these factors is dispositive and both must be viewed together before reaching a decision.'" Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991) (quoting Wilborn, 789 F.2d at 1331).

**A.    Likelihood of Plaintiff's Success on the Merits**

To receive court-appointed counsel, Plaintiff must present a nonfrivolous claim that is likely to succeed on the merits.

Wilborn, 789 F.2d at 1331.  In his First Amended Complaint, George alleges that his Eighth and Fourteenth Amendment rights were violated when prison officials failed to protect him from an attack by another inmate. (First Am. Compl. 8, ECF No. 5.)  Although Plaintiff is currently incarcerated at Salinas Valley State Prison, the allegations of the First Amended Complaint arise from events that occurred while George was incarcerated at Centinela State Prison.  (Id. at 3.)

Plaintiff alleges that on January 8, 2010, prison staff at Centinela conducted security training exercises and that Defendant Captain Hernandez was in charge of the exercise on facility C yard. (Id.)  George claims that Defendant Hernandez ordered prison staff to keep inmates from entering the security area unless the inmate had a written entry pass and identification.  (Id.)  According to Plaintiff, Defendants Valasquez and Alvarado allowed two inmates to breach security and enter the yard in order to assault Plaintiff. (Id. at 4.)  Plaintiff alleges that Valasquez and Alvarado watched the assault from the side wall of the facility four building. (Id.) George further claims Sergeant Valasquez was the head yard officer in charge of all yard staff. (Id. at 6.)

Plaintiff alleges that after Defendant Farias observed four inmates, including Plaintiff, fighting on yard two, Farias allegedly radioed for a "code response" and activated the yard alarm.  (Id. at 4.)  Farias ordered all inmates to the ground over the public address system; however, Plaintiff did not comply. (Id.)  George claims he received a blow to back of the head and was struck in the torso area with a fist. (Id. at 5.)

Plaintiff contends that Defendant Carvajal responded to the radio call of Defendant Farias and observed Plaintiff and another inmate preparing to fight each other. (Id. at 5.) Carvajal ordered both inmates to get down on the ground. (Id.) George allegedly hesitated at first, but eventually complied. (Id.) Defendant Carvajal then cuffed Plaintiff and escorted him to a holding cell before placing George in administrative segregation housing. (Id.) Plaintiff alleges that Defendants Lopez, Hernandez, and other staff members met to write a fraudulent report regarding the inmates' participation in a riot in order to cover up staff's negligence and security breach. (Id.)

George maintains that he asked to see a nurse for his injuries, and the nurse discovered a golf-ball-sized bump behind his left ear. (Id. at 6.) Plaintiff alleges that he experienced a headache and blurry vision from the incident; he was prescribed pain relief medication and eye drops, and was scheduled to see an optometrist. (Id.) Plaintiff contends that he was diagnosed with post-traumatic stress disorder syndrome as a result of the assault. (Id.)

In his Amended Complaint, George maintains that Defendant Valenzuela was the senior hearing officer conducting Plaintiff's 115 rules violation hearing, and Valenzuela recommended a four month SHU (segregated housing unit) term. (Id.) Plaintiff claims Defendant Valenzuela violated department rules and regulations by interfering with Plaintiff's assigned hearing incident investigator. (Id.) Plaintiff states that Defendant Gutierrez was his assigned investigator. (Id. at 7.) Gutierrez is alleged to have shared Plaintiff's witness questionnaire with Defendant

Valenzuela before the hearing so that Valenzuela could instruct Gutierrez not to ask certain questions that may incriminate staff. (Id. at 7.) Plaintiff alleges that Defendant Calderon was the chief disciplinary officer, recommended the amount of time for Plaintiff's disciplinary action, and ordered Plaintiff to be transferred from Centinela in an alleged effort to cover up staff negligence. (Id.) George claims that Defendant Warden Uribe signed off on the documents and is responsible for staff's actions. (Id.)

"[T]he treatment a prisoner receives and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" Id. at 33 (quoting DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989)). Therefore, a plaintiff has a right to be protected from violence while in custody. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). "Prison officials must take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982). When the state takes a person into custody, the Constitution imposes a duty to assume some responsibility for his safety and well-being. DeShaney, 489 U.S. at 1005.

To establish an Eighth Amendment violation, a plaintiff must show that the defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner's safety. Farmer, 511 U.S. at 834; see Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995); Madrid v. Gomez, 889 F. Supp. 1146, 1267-68 (N.D. Cal.

1995). The prison official is only liable when two requirements are met; one is objective, and the other is subjective. Farmer, 511 U.S. at 834; see Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009). First, the purported violation must be objectively "sufficiently serious." Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must subjectively "know of and disregard an excessive risk to inmate health or safety." Id. at 837.

The Equal Protection Clause of the Fourteenth Amendment ensures that similarly situated persons are treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). This right extends to prisoners. Wolf v. McDonnell, 418 U.S. 539, 556 (1974). The equal protection guarantee safeguards not only groups of people, but also individuals who would constitute a "class of one." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

A plaintiff can establish an equal protection cause of action by demonstrating that the defendant intentionally discriminated on the basis of plaintiff's membership in a protected class, such as race, religion, national origin, and poverty. Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998); Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986); see United States v. Whitlock, 639 F.3d 935, 941 (9th Cir. 2011) (stating that prisoners do not constitute a suspect class for equal protection purposes). Alternatively, if the state action does not implicate a fundamental right or a suspect classification, a plaintiff can make an equal protection claim by establishing that the defendant intentionally treated plaintiff differently from

other similarly situated individuals without a rational basis for the difference in treatment. <u>Engquist v. Or. Dep't of Agric.</u>, 553 U.S. 591, 601 (2008); <u>Olech</u>, 528 U.S. at 564.

It is too early for the Court to determine George's likelihood of success on the merits. Based on the allegations in the First Amended Complaint, and the arguments made in Defendants' pending Motion to Dismiss [ECF No. 23], Plaintiff may not have sufficiently pleaded that prison staff subjectively knew of, and disregarded, an excessive risk to Plaintiff's health or safety to support a claim under the Eight Amendment. <u>Farmer</u>, 511 U.S. at 834. Likewise, George has not alleged a membership in a protected class to sufficiently plead a Fourteenth Amendment violation. <u>Barren</u>, 152 F.3d at 1194-95. Without additional factual information, the Court cannot conclude that the Plaintiff is likely to succeed on the merits of his claims. See <u>Bailey v. Lawford</u>, 835 F. Supp. 550, 552 (S.D. Cal. 1993).

**B.   <u>Plaintiff's Ability to Proceed Without Counsel</u>**

To be entitled to appointed counsel, George must also show he is unable to effectively litigate the case pro se in light of the complexity of the issues involved. See <u>Wilborn</u>, 789 F.2d at 1331. Courts have required that "indigent plaintiffs make a reasonably diligent effort to secure counsel as a prerequisite to the court's appointing counsel for them." <u>Bailey</u>, 835 F. Supp. at 552. Here, Plaintiff has not shown he made any efforts to secure counsel. (<u>See</u> Mot. Appointment Counsel 2-3, ECF No. 33.)

George initially claims he lacks any meaningful sources of income to afford legal counsel. (<u>Id.</u> at 2, 5.) This argument is not sufficient because indigence alone does not entitle a plaintiff

to appointed counsel.  Further, Plaintiff asserts that his imprisonment will limit his ability to litigate, because prison lock-downs "impair his access to the law library."  (Id. at 2.) Although his access to legal materials may be limited, George has not demonstrated that he is being denied "reasonable" access.  See Lindquist v. Idaho State Bd. of Corr., 776 F.2d 851, 858 (9th Cir. 1985).  "[T]he Constitution does not guarantee a prisoner unlimited access to a law library.  Prison officials of necessity must regulate the time, manner, and place in which library facilities are used."  Id. (citation omitted).  George has not shown that he does not have reasonable access to a law library or other means of conducting legal research, or that he is subjected to burdens beyond those ordinarily experienced by pro se plaintiffs.

Plaintiff also contends that he has limited education, and the issues involved in this matter are "very complex."  (Mot. Appointment Counsel 2-3, ECF No. 33.)  The Court notes that Plaintiff's Amended Complaint is adequate in form.  Additionally, George was able to file a motion requesting to proceed in forma pauperis [ECF No. 2], a prior Motion for Appointment of Counsel [ECF No. 4], an Amended Complaint [ECF No. 5], and a Motion for Entry of Default Judgment [ECF No. 31].  He was also able to file his Response in Opposition to Defendants' Motion to Dismiss [ECF No. 26], and a Supplemental Response in Opposition to the Motion to Dismiss [ECF No. 29], suggesting an ability to navigate the legal process.  See Plummer v. Grimes, 87 F.3d 1032, 1033 (8th Cir. 1996) (finding the district court did not abuse its discretion in denying plaintiff counsel, in part because plaintiff adequately filed a complaint and other pretrial materials).

"[A]ny pro se litigant certainly would be better served with the assistance of counsel." Rand, 113 F.3d at 1525; see also Wilborn, 789 F.2d at 1331 ("[A] pro se litigant will seldom be in a position to investigate easily the facts necessary to support the case."). Plaintiff is only entitled to appointed counsel if he can show "that because of the complexity of the claims he [is] unable to articulate his positions." Rand, 113 F.3d at 1525. George has not identified anything in the record that makes this case "exceptional" or the issues in it particularly complex. Agyeman, 390 F.3d at 1103.

Because Plaintiff has failed to demonstrate either a likelihood of success on the merits or an inability to represent himself beyond the ordinary burdens encountered by pro se prisoners, Plaintiff's Motion for Appointment of Counsel is **DENIED** without prejudice.

Dated: January 17, 2012

                                Ruben B. Brooks
                    United States Magistrate Judge

cc: Judge Sammartino
    All Parties of Record