1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   RICHARD EARL GEORGE,              )   Civil No. 11cv70 JLS(RBB)
                                       )
12                  Plaintiff,         )   **REPORT AND RECOMMENDATION**
                                       )   **GRANTING DEFENDANTS' MOTION TO**
13                                     )   **DISMISS PLAINTIFF'S FIRST**
     v.                                )   **AMENDED COMPLAINT [ECF NO. 23]**
14                                     )
                                       )
15   D. URIBE, et al.,                 )
                                       )
16                  Defendants.        )
                                       )
17                                     )
                                       )
18   _____)

19       Plaintiff Richard Earl George, a state prisoner currently

20   incarcerated at Salinas Valley State Prison, and proceeding pro se

21   and in forma pauperis, filed a civil rights complaint on January

22   12, 2011, pursuant to 42 U.S.C. § 1983 [ECF No. 1].  On March 21,

23   2011, United States District Judge Janis L. Sammartino dismissed

24   Plaintiff's Complaint for failure to state a claim upon which

25   relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and

26   § 1915A(b), and gave him leave to file an amended complaint [ECF

27   No. 3].  Plaintiff timely filed a First Amended Complaint against

28   Warden Domingo Uribe and various correctional officers at Centinela

State Prison ("Centinela"), alleging his constitutional rights were violated when he was attacked by another inmate on January 8, 2010, while housed at Centinela. (First Am. Compl. 3,[1] ECF No. 5.) On August 5, 2011, Defendants filed a Motion to Dismiss the First Amended Complaint [ECF No. 23]. On September 1, 2011, Plaintiff George filed a Memorandum of Points and Authorities in Support of Plaintiff [ECF No. 26]. Shortly thereafter, he filed a declaration in opposition to Defendants' Motion to Dismiss [ECF No. 29]. Defendants did not file a reply.

The Court finds that Defendants' Motion to Dismiss is suitable for resolution on the papers. See S.D. Cal. Civ. R. 7.1(d)(1). After reviewing the First Amended Complaint, the Motion to Dismiss, and Plaintiff's Memorandum and George's subsequently filed Declaration, the Motion to Dismiss should be **GRANTED**.

## I.   FACTUAL BACKGROUND

Plaintiff alleges that on January 8, 2010, while incarcerated at Centinela State Prison, he was attacked by other inmates in the prison yard. (First Am. Compl. 3, ECF No. 5.) Plaintiff alleges that on that date, prison staff at Centinela conducted security training exercises and that Defendant Captain Hernandez was in charge of the exercise on facility C yard. (Id.) George claims that Defendant Hernandez ordered prison staff to keep inmates from entering the security area unless the inmate had a written entry pass and identification. (Id.) According to Plaintiff, Defendants Valasquez and Alvarado allowed two inmates, Whiting and Hayes, to breach security and enter the yard in order to assault Plaintiff.

---

[1] Because the First Amended Complaint is not consecutively paginated, the Court will cite to the document using the page numbers assigned by the Court's electronic case filing system.

1    (<u>Id.</u> at 4.)  Plaintiff alleges that Valasquez and Alvarado watched

2    the assault from the side wall of the facility four building.

3    (<u>Id.</u>) George further claims Sergeant Valasquez was the head yard

4    officer in charge of all yard staff. (<u>Id.</u> at 6.)

5         Plaintiff alleges that after Defendant Farias observed four

6    inmates, including Plaintiff, fighting on yard two, Farias

7    allegedly radioed for a "code response" and activated the yard

8    alarm.  (<u>Id.</u> at 4.)  Farias ordered all inmates to the ground over

9    the public address system; however, Plaintiff did not comply.

10   (<u>Id.</u>)  George claims he received a blow to back of the head and was

11   struck in the torso area with a fist by inmates. (<u>Id.</u> at 5.)

12        Plaintiff contends that Defendant Carvajal responded to the

13   radio call made by Defendant Farias and observed Plaintiff and

14   another inmate preparing to fight each other.  (<u>Id.</u>)  Carvajal

15   ordered both inmates to get down on the ground.  (<u>Id.</u>)  George

16   allegedly hesitated at first, but eventually complied.  (<u>Id.</u>)

17   Defendant Carvajal then cuffed Plaintiff and escorted him to a

18   holding cell before placing him in administrative segregation

19   housing.  (<u>Id.</u>)  Plaintiff alleges that Defendants Lopez,

20   Hernandez, and other staff members met to write a fraudulent report

21   regarding the inmates' participation in a riot in order to cover up

22   staff's negligence and security breach.  (<u>Id.</u>)

23        George maintains that he asked to see a nurse for his

24   injuries, and the nurse discovered a golf-ball-sized bump behind

25   his left ear.  (<u>Id.</u> at 6.)  Plaintiff alleges that he experienced a

26   headache and blurry vision from the incident; he was prescribed

27   pain relief medication and eye drops, and was scheduled to see an

28   optometrist.  (<u>Id.</u>)  Plaintiff contends that he was diagnosed with

post-traumatic stress disorder syndrome as a result of the assault. (<u>Id.</u>)

In his Amended Complaint, George maintains that Defendant Valenzuela was the senior hearing officer conducting the subsequent 115 rules violation hearing, and Valenzuela recommended that George receive a four-month SHU (segregated housing unit) term. (<u>Id.</u>) Plaintiff claims Defendant Valenzuela violated department rules and regulations by interfering with Plaintiff's assigned hearing incident investigator. (<u>Id.</u>) Plaintiff states that Defendant Gutierrez was his assigned investigator. (<u>Id.</u> at 7.) Gutierrez is alleged to have shared Plaintiff's witness questionnaire with Defendant Valenzuela before the hearing so that Valenzuela could instruct Gutierrez not to ask certain questions that may show staff negligence and a breach of security. (<u>Id.</u> at 7.) Plaintiff alleges that Defendant Calderon was the chief disciplinary officer, recommended the amount of time for Plaintiff's disciplinary action, and ordered Plaintiff to be transferred from Centinela in an effort to cover up staff negligence. (<u>Id.</u>) George claims that Defendant Warden Uribe signed off on the documents and is responsible for staff's actions. (<u>Id.</u>)

These allegations form the basis of Plaintiff's Complaint for violation of the Eighth Amendment, Fourteenth Amendment, and civil conspiracy.

**II.   LEGAL STANDARDS**

**A.   <u>Motion to Dismiss for Failure to State a Claim</u>**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.   See <u>Davis v. Monroe</u>

4

<u>Cnty. Bd. of Educ.</u>, 526 U.S. 629, 633 (1999).  "The old formula -- that the complaint must not be dismissed unless it is beyond doubt without merit -- was discarded by the <u>Bell Atlantic decision [Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007)]."  <u>Limestone Dev. Corp. v. Vill. of Lemont</u>, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009).  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004) (citing <u>Karam v. City of Burbank</u>, 352 F.3d 1188, 1192 (9th Cir. 2003)); <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995); <u>N.L. Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see</u> <u>Twombly</u>, 550 U.S. at 563 n.8.  A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001) (citing <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Cholla Ready Mix, Inc., 382 F.3d at 973 (quoting Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on a Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside of the pleadings. Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n.1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ." Parks Sch. of Bus., Inc., 51 F.3d

at 1484 (citing <u>Cooper v. Bell</u>, 628 F.2d 1208, 1210 n.2 (9th Cir.

1980)).  The court may also consider documents "'whose contents are

alleged in a complaint and whose authenticity no party questions,

but which are not physically attached to the [plaintiff's]

pleading.'"  <u>Sunrize Staging, Inc. v. Ovation Dev. Corp.</u>, 241 F.

App'x 363, 365 (9th Cir. 2007) (quoting <u>Janas v. McCracken (In re</u>

<u>Silicon Graphics Inc. Sec. Litig.)</u>, 183 F.3d 970, 986 (9th Cir.

1999)) (alteration in original); <u>see</u> <u>Stone v. Writer's Guild of Am.</u>

<u>W., Inc.</u>, 101 F.3d 1312, 1313-14 (9th Cir. 1996).

        These Rule 12 (b)(6) guidelines apply to Defendants' Motion to

Dismiss.

**B.   <u>Standards Applicable to Pro Se Litigants</u>**

        Where a plaintiff appears in propria persona in a civil rights

case, the court must construe the pleadings liberally and afford

the plaintiff any benefit of the doubt.  <u>Karim-Panahi v. Los</u>

<u>Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

of liberal construction is "particularly important in civil rights

cases."  <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).

In giving liberal interpretation to a pro se civil rights

complaint, courts may not "supply essential elements of claims that

were not initially pled."  <u>Ivey v. Bd. of Regents of the Univ. of</u>

<u>Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

allegations of official participation in civil rights violations

are not sufficient to withstand a motion to dismiss."  <u>Id.</u>; <u>see</u>

<u>also</u> <u>Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir.

1984) (finding conclusory allegations unsupported by facts

insufficient to state a claim under § 1983).  "The plaintiff must

allege with at least some degree of particularity overt acts which

defendants engaged in that support the plaintiff's claim." <u>Jones</u>, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. <u>Karim-Panahi</u>, 839 F.2d at 623-24. But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. See <u>James v. Giles</u>, 221 F.3d 1074, 1077 (9th Cir. 2000).

**C.   <u>Stating a Claim Under 42 U.S.C. § 1983</u>**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983 (West 2010); <u>Shah v. County of Los Angeles</u>, 797 F.2d 743, 746 (9th Cir. 1986).

**III.   DEFENDANTS' MOTION TO DISMISS**

Defendants Uribe, Hernandez, Lopez, Valasquez, Farias, Valenzuela, Gutierrez, Alvarado, Calderon, and Carvajal move to dismiss George's First Amended Complaint in its entirety for failure to state a claim upon which relief may be granted. (Mot. Dismiss 1, ECF No. 23.) The Defendants also assert that they are entitled to qualified immunity. (<u>Id.</u> Attach. #1 Mem. P. & A. 9.)

**A.    Prison Yard Defendants (Farias, Carvajal, Valasquez, Alvarado, Lopez and Hernandez)**

George has alleged that Defendants failed to protect him from an inmate attack in the prison yard in violation of the Eighth Amendment.  (First Am. Compl. 3, ECF No. 5.)

**1.   Eighth Amendment Claim:   Failure to Protect**

"[T]he treatment a prisoner receives and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).   The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" Id. at 33 (quoting DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989)).   Therefore, an inmate has a right to be protected from violence while in custody. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). "Prison officials must take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982).   When the state takes a person into custody, the Constitution imposes a duty to assume some responsibility for his safety and well-being. DeShaney, 489 U.S. at 1005.

To establish an Eighth Amendment violation, a plaintiff must show that the defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner's safety. Farmer, 511 U.S. at 834; see Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995); Madrid v. Gomez, 889 F. Supp. 1146, 1267-68 (N.D. Cal. 1995).   The prison official is only liable when two requirements are met; one is objective, and the other is subjective. Farmer, 511 U.S. at 834; see Foster v. Runnels, 554 F.3d 807, 812 (9th Cir.

2009).  The purported violation must be objectively "sufficiently serious."  Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  In addition, the prison official must subjectively "know of and disregard an excessive risk to inmate health or safety."  Id. at 837.

"First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety.  Thomas, 611 F.3d at 1150-51 (citing Farmer, 511 U.S. at 837) (footnote omitted).  This may be satisfied if the prisoner establishes that the risk posed by the violation was "obvious." Id.  A plaintiff need not show that an "individual prison official had specific knowledge that harsh treatment of a particular inmate, in particular circumstances, would have a certain outcome."  Id. "Rather, [courts] measure what is 'obvious' in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved."  Id. at 1151 (citing Farmer, 511 U.S. at 842).  For example, if a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and the defendant "had been exposed to information concerning the risk and thus 'must have known' about it," a trier of fact could find defendant had actual knowledge of the risk. Farmer, 511 U.S. at 842 (citation omitted); see also Thomas, 611 F.3d at 1151.

"Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk."  Thomas, 611 F.3d at 1150-51 (footnote omitted) (citing Farmer, 511 U.S. at 844).  "[P]rison officials who actually knew of

a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." <u>Farmer</u>, 511 U.S. at 844.

The Court will consider the subjective component of the Eighth Amendment inquiry as it applies to each Defendant separately. <u>See</u> <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988) ("The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.").

**2.    Defendants Alvarado and Valasquez**

George's failure-to-protect claim against Defendants Alvarado and Valasquez is based on the allegation that they allowed two inmates to enter the yard to attack Plaintiff. (First Am. Compl. 4, ECF No. 5.) According to Plaintiff, Defendants Valasquez and Alvarado allowed inmates Whiting and Hayes to breach security and enter the yard in order to assault him. (<u>Id.</u>) George also alleges that Valasquez and Alvarado then watched the assault from the side wall of the facility four building. (<u>Id.</u> at 6.) In their Motion to Dismiss, Defendants argue that Plaintiff has not alleged sufficient facts to state a claim against Alvarado and Valasquez for violation of the Eighth Amendment. (Mot. Dismiss Attach. #1 Mem. P. & A. 6, ECF No. 23.) Defendants point out that Plaintiff does not offer any facts to support an inference that either Defendant was aware of a threat to Plaintiff's safety. (<u>Id.</u>)

Plaintiff's claim against Alvarado and Valasquez appears to center around the allegation that Defendants gave inmates Whiting and Hayes access to the yard, and the inmates subsequently attacked George. This allegation alone, however, is insufficient to state a

claim against Defendants Alvarado and Valasquez for failure to protect under the Eighth Amendment.

The First Amended Complaint does not state any facts to support an inference that Defendants had "more than a mere suspicion that an attack will occur." Kincheloe, 794 F.2d at 459. Specifically, George does not plead any facts to explain why the two inmates posed a threat to Plaintiff.  In his opposition to the Motion to Dismiss, George concedes that he did not view the inmates who attacked him as enemies.  ([Opp'n] Mem. P. & A. 7,[2] ECF No. 26.)  Plaintiff also fails to explain how the Defendants could have known that inmate Hayes would attack George.  He does not allege any documented past attacks that would have put officials on notice of the risk to Plaintiff's safety.  See Farmer, 511 U.S. at 842.

Plaintiff argues that the special training staff conducted on the day of the attack was "geared to prevent" such an incident, and the events were the result of "gross negligence."  ([Opp'n] Mem. P. & A. 7, ECF No. 26.)  To the extent George contends that Alvarado and Valasquez were negligent in allowing the incident to occur, he fails to establish a claim for deliberate indifference.  Farmer, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").  To state a claim under the Eighth Amendment, George must show that Defendants acted with deliberate indifference to a substantial risk of serious harm to his safety.  Id. at 834.  Deliberate indifference requires defendants to know of, and disregard, an excessive risk to plaintiff's safety.  Id. at 837.  Here, Plaintiff does not plead

---

[2] Because the response in opposition is not consecutively paginated, the Court will cite to the document using the page numbers assigned by the Court's electronic case filing system.

any facts that would indicate that inmates Whiting and Hayes presented a substantial risk to his safety or that Defendants Alvarado and Valasquez were aware of that risk.

George's allegation that Defendants Alvarado and Valasquez watched the inmate fight from an "out-of-bounds area" is insufficient, by itself, to state a claim for deliberate indifference. (First Am. Compl. 4, ECF No. 5.) George concedes that Defendants Farias and Carvajal intervened to stop the fight between George and Hayes by activating the alarm and directing all inmates to get to the ground. (Id.) Plaintiff has not alleged that Defendants Alvarado and Valasquez were in a better position than Farias and Carvajal to stop the inmate fight. George's allegations against Alvarado and Valasquez, as stated in the First Amended Complaint, are insufficient to support a claim against these Defendants for failure to protect under the Eighth Amendment. Plaintiff may be able to state a claim for deliberate indifference against these Defendants if he can articulate additional facts that support an inference that Defendants Alvarado and Valasquez were aware that allowing inmates Whiting and Hayes into the C yard presented a substantial risk to Plaintiff's safety and that Defendants disregarded this risk. Accordingly, the Motion to Dismiss the Eighth Amendment claim against Defendants Alvarado and Valasquez should be granted with leave to amend.

### 3. Defendants Farias and Carvajal

Plaintiff's allegations against Farias and Carvajal are based on the events that occurred after the attack. George alleges that when Defendant Farias observed Plaintiff fighting with other inmates on yard two, he radioed for a code response, activated the

yard alarm, and ordered all inmates to the ground over the public address system.  (First Am. Compl. 4, ECF No. 5.)  George contends that Defendant Carvajal responded to Farias's radio call and observed Plaintiff and another inmate, Bryon Hayes, preparing to fight each other.  (Id. at 5.)  Carvajal allegedly ordered the inmates to get on the ground, and Plaintiff eventually complied.  (Id.)  Carvajal then handcuffed Plaintiff and escorted him to a holding cell.  (Id.)

Defendants Farias and Carvajal argue that Plaintiff has not alleged sufficient facts to state a claim against them for violation of the Eighth Amendment.  (Mot. Dismiss Attach. #1 Mem. P. & A. 3, ECF No. 23.)  George must allege that Defendants were aware of a "substantial risk of serious harm" to Plaintiff.  Thomas, 611 F.3d at 1150.  Deliberate indifference requires an actual perception of risk.  Bonty v. Ramsey, No. C 10–5360 LHK (PR), 2011 WL 6330656, at *6 (N.D. Cal. Dec. 19, 2011); see also Farmer, 511 U.S. at 836 & n.4.

> The standard does not require that the guard or official "'believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault.  But, on the other hand, he must have more than a mere suspicion that an attack will occur.'"

Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (quoting State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir. 1983)).  Advance notification is not a necessary element of an Eighth Amendment failure-to-protect claim.  Farmer, 511 U.S. at 849.

Plaintiff's allegations, without more, do not support a failure-to-protect claim under the Eighth Amendment against Defendants Farias and Carvajal.  George has not alleged that either Farias or Carvajal was aware of a 'substantial risk of serious

14

harm' to Plaintiff's health or safety before the attack occurred. See Thomas, 611 F.3d at 1150-51.  In fact, nothing in the First Amended Complaint or in the opposition indicates that Defendants Farias and Carvajal were involved in the events leading up to the attack.  Nor has the Plaintiff alleged that Defendants disregarded the risk to George by failing to take reasonable measures to stop the inmate fight.  See Farmer, 511 U.S. at 846-47 & n.9.  On the contrary, George acknowledges that Farias intervened by activating the alarm and directing all inmates to get to the ground.  (First Am. Compl. 4, ECF No. 5.)  Similarly, Carvajal responded to the radio call made by Farias to stop the fight between George and Hayes.  (Id. at 5.)

In his supplemental opposition to the Motion to Dismiss, George contends that Defendants had knowledge of the threat "on C-yard" because of "numerous [sic] training activity that took place" on that day.  (Decl. George 4,[3] ECF No. 29.)  Plaintiff does not explain how the training exercise conducted by the prison put Defendants on notice of a potential threat to his safety.  To survive a motion to dismiss, Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. 662, __, 129 S. Ct. at 1949.  Here, George does not offer sufficient facts to support an inference that Defendants Farias and Carvajal perceived an actual risk of harm to George.

Plaintiff also argues that Defendants "covered up" staff's negligence and conspired in failing to protect him from the attack.

---

[3] Because the Declaration is not consecutively paginated, the Court will cite to the document using the page numbers assigned by the Court's electronic case filing system.

([Opp'n] Mem. P. & A. 2, ECF. No. 26.)  George also contends that

Defendants created an untruthful report as a part of their

conspiracy to avoid liability for the incident.  (Id. at 2-3.)  The

Court addresses Plaintiff's civil conspiracy claims separately

below.  Based on the allegations in the Amended Complaint,

Plaintiff fails to state a claim against Defendant Farias or

against Defendant Carvajal for violation of the Eighth Amendment.

Accordingly, the court should grant the motion to dismiss the

Eighth Amendment claim against Defendants Farias and Carvajal with

leave to amend.

### 4.   Defendants Lopez and Hernandez

Plaintiff alleges that Defendant Lopez met with Defendant

Hernandez and other staff members to prepare a fraudulent report

about the incident in order to cover up staff's negligence.  (First

Am. Compl. 5, ECF No. 5.)  Defendants move to dismiss Plaintiff's

failure-to-protect claims, arguing that Lopez and Hernandez were

not deliberately indifferent to George's needs, because they did

not become involved in the incident until after the altercation on

the yard occurred.  (Mot. Dismiss Attach. #1 Mem. P. & A. 8, ECF

No. 23.)  In his opposition, George contends that Lopez and

Hernandez were the "lead authority" on the C yard on the day of the

incident.  ([Opp'n] Mem. P. & A. 9, ECF No. 26.)

A plaintiff may state a claim for deliberate indifference

against a supervisor based on the supervisor's knowledge of, and

acquiescence in, unconstitutional conduct by his or her

subordinates.  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

"A defendant may be held liable as a supervisor under § 1983 'if

there exists either (1) his or her personal involvement in the

constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  Id. (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d at 633.

George's contention that Defendants Lopez and Hernandez were in charge of the C yard on the day he was attacked is insufficient to support a causal connection between Defendants' actions and his alleged injury.  Specifically, Plaintiff does not explain which actions or omissions by Defendants related to their authority over the yard and deprived Plaintiff of his constitutional rights. Starr, 652 F.3d at 1207.  Nor does George plead any facts that indicate that Lopez or Hernandez knew or acquiesced in the wrongful conduct of others.  Id.  Accordingly, the Eighth Amendment claim against Defendants Lopez and Hernandez should be dismissed with leave to amend.

**B.   Disciplinary Hearing Defendants (Gutierrez, Valenzuela, Lopez, Hernandez)**

George also alleges that his Fourteenth Amendment rights were violated during the disciplinary hearing and imposition of punishment, because he was not treated equally.  (First Am. Compl. 11, ECF No. 5.)

**1.   Fourteenth Amendment**

The Equal Protection Clause of the Fourteenth Amendment ensures that similarly situated persons are treated alike.  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). This right extends to prisoners.  Wolf v. McDonnell, 418 U.S. 539,

556 (1974).  The equal protection guarantee safeguards not only groups of people, but also individuals who would constitute a "class of one."  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

A plaintiff can establish an equal protection violation by demonstrating that the defendant intentionally discriminated on the basis of plaintiff's membership in a protected class, such as race, religion, national origin, and poverty.  <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194-95 (9th Cir. 1998); <u>Damiano v. Fla. Parole & Prob. Comm'n</u>, 785 F.2d 929, 932-33 (11th Cir. 1986); <u>see</u> <u>United States v. Whitlock</u>, 639 F.3d 935, 941 (9th Cir. 2011) (stating that prisoners do not constitute a suspect class for equal protection purposes). Alternatively, if the state action does not implicate a fundamental right or a suspect classification, a plaintiff can make an equal protection claim by establishing that the defendant intentionally treated plaintiff differently from other similarly situated individuals without a rational basis for the difference in treatment.  <u>Engquist v. Or. Dep't of Agric.</u>, 553 U.S. 591, 601 (2008); <u>Olech</u>, 528 U.S. at 564.

## 2.   Defendants Gutierrez and Valenzuela

Plaintiff alleges that Defendant Gutierrez was the assigned investigator for the inmate fight incident, and Defendant Valenzuela was a senior hearing officer who conducted Plaintiff's disciplinary hearing.  (First Am. Compl. 2, 7, ECF No. 5.) George's Fourteenth Amendment claim against these Defendants is premised on the assertion that Gutierrez shared Plaintiff's witness questionnaire with Valenzuela before the hearing, which allowed Valenzuela to instruct Gutierrez not to ask certain questions that

18

may incriminate staff.  (Id. at 7.)  Defendants move to dismiss this claim, arguing that these allegations do not support a constitutional violation.  (Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 23.)  Gutierrez and Valenzuela also contend that they were complying with California Code of Regulations, title 15, sections 3318 and 3315, when they discussed the findings prior to the disciplinary hearing and when Valenzuela ruled on the relevancy of some questions to the rules violation.  (Id.)

Section 3318, entitled "Assistance to Inmates for Serious Rule Violations," provides for an investigative employee designated to gather information and "[s]ubmit a written report to the senior hearing officer . . . to include witness statements and a summary of the information collected specific to the violation charged." Cal. Code Regs. tit. 15, § 3318(a).  The inmate has the right to ask questions of the witnesses at the hearing, however, the senior hearing officer must "screen all questions to ensure they are relevant to the violation charged."  Cal. Code Regs. tit. 15, § 3315(e)(5).

Defendants also point out that because Plaintiff pleaded guilty to the rules violation charge, it is unclear how any of the Defendants involved in his hearing could have violated Plaintiff's rights.  (Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 23.)  At the hearing, George pleaded guilty to willfully participating in a riot with use of force, in violation of Cal. Code Regs. tit. 15, § 3005(d)(1), and he testified that he retaliated to defend himself after he was struck on the back of his head.  (See First Am. Compl. Attach. #1 Ex. A, at 6, ECF No. 5.)

In opposition, Plaintiff argues that Defendants violated the Due Process Clause of the Fourteenth Amendment by depriving him of the right to prepare a defense for the hearing. ([Opp'n] Mem. P. & A. 7, ECF No. 26.) To plead a procedural due process violation, an inmate must argue that the challenged conduct "present[s] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Connor, 515 U.S. 472, 486 (1995). A prisoner must allege facts demonstrating an "atypical and significant hardship in relation to the ordinary incidents of prison life" caused by the defendant's procedural omissions. See Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010) (quoting Sandin, 515 U.S. at 484); Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997).

Here, Plaintiff fails to provide sufficient factual support for his claim that Defendants interfered with his right to a hearing. George was assigned an investigator and was able to prepare questions for witnesses at the hearing. (See First Am. Compl. Attach. #1 Ex. A, ECF No. 5.) To the extent George argues that Defendants deprived him of his rights when Gutierrez shared Plaintiff's witness questionnaire with Valenzuela before the hearing, Defendants' actions were authorized by title 15 of California Code of Regulations. See Cal. Code Regs. tit. 15, § 3318(a). George's conclusory statements regarding alleged due process violations are not supported by the facts as pleaded in the First Amended Complaint. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. Twombly, 550 U.S. at 555. Based on the allegations in the Amended Complaint, Plaintiff fails to state a claim against

Defendants Gutierrez or Valenzuela for violation of the Fourteenth Amendment.  Additionally, because George does not allege that these Defendants were involved in the yard incident, he cannot state a failure-to-protect claim against them.  Accordingly, the district court should grant the Motion to Dismiss the claims against Defendants Gutierrez and Valenzuela with leave to amend.

**C.   Supervisory Defendants**

A plaintiff may state a claim for deliberate indifference against a supervisor based on the supervisor's knowledge of, and acquiescence in, unconstitutional conduct by his or her subordinates.  <u>Starr</u>, 652 F.3d at 1207.  "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  <u>Id.</u> (quoting <u>Hansen v. Black</u>, 885 F.2d at 646).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  <u>Leer</u>, 844 F.2d at 633.

A causal connection is established if a defendant sets in motion a series of acts by others or knowingly refuses to terminate a series of acts by others that the supervisor reasonably should have known would lead to a constitutional violation.  <u>Starr</u>, 652 F.3d at 1207-08 (citing <u>Dubner v. City & Cnty. of San Francisco</u>, 266 F.3d 959, 968 (9th Cir. 2001)).  "'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct

1  that showed a reckless or callous indifference to the rights of

2  others.'"  Id. at 1208 (quoting Watkins v. City of Oakland, 145

3  F.3d 1087, 1093 (9th Cir. 1998)).

4      **1.   Warden Uribe**

5      Plaintiff contends that, as head of the institution's

6  Administrative Segregation Committee, Uribe signed off on documents

7  and is responsible for staff members' actions.  (First Am. Compl.

8  7, ECF No. 5.)  Defendant Uribe moves to dismiss Plaintiff's First

9  Amended Complaint, arguing that Plaintiff has not alleged any facts

10 to support a claim against him as a supervisor.  (Mot. Dismiss

11 Attach. #1 Mem. P. & A. 5, ECF No. 23.)  In opposition to the

12 Motion to Dismiss, Plaintiff argues that Defendant Uribe was the

13 "overall decision maker" for the C yard plan of operations.

14 ([Opp'n] Mem. P. & A. 4, ECF No. 26.)

15     The allegations in the First Amended Complaint are

16 insufficient to state a claim against Uribe, because George has not

17 provided any specific facts suggesting a causal connection between

18 the warden's actions and the injury to Plaintiff.  See Redman v.

19 City of San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991) (stating

20 that a plaintiff may state a § 1983 cause of action against a

21 supervisor when there is an adequate causal connection between the

22 defendant's breach of duty and the constitutional injury).  Based

23 on George's generalized contentions, the requisite causal

24 connection cannot be reasonably inferred.  See Iqbal, 556 U.S. at

25 ___, 129 S. Ct. at 1949.  Further, there are no concrete facts

26 suggesting that Warden Uribe improperly supervised Defendants, or

27 acted with a reckless or callous indifference to Plaintiff's

28 rights.  See Starr, 652 F.3d at 1208 ("We have held that

1  'acquiescence or culpable indifference' may suffice to show that a

2  supervisor 'personally played a role in the alleged constitutional

3  violations.'")

4      Accordingly, Defendant Uribe's Motion to Dismiss the First

5  Amended Complaint should be granted.  Because it is unclear whether

6  George could amend to allege facts sufficient to state a deliberate

7  indifference claim against Uribe, Plaintiff should be given leave

8  to amend.  <u>Lopez</u>, 203 F.3d at 1127; <u>see</u> <u>James</u>, 221 F.3d at 1077.

9      **2.   Defendant Calderon**

10      Plaintiff alleged that Defendant Calderon, the chief

11  disciplinary officer at Centinela, assessed the amount of time for

12  Plaintiff's rules violation.  (First Am. Compl. 7, ECF No. 5.)

13  George also contends that Defendant Calderon was a member of the

14  committee that recommended Plaintiff's transfer to a different

15  prison to "cover up" the incident.  (<u>Id.</u>)  Calderon moves to

16  dismiss Plaintiff's claims against him, arguing that the

17  documentation Plaintiff attached to the Amended Compliant does not

18  support these allegations.  (Mot. Dismiss Attach. #1 Mem. P. & A.

19  7, ECF No. 23.)  Defendant argues that he was not involved in

20  George's disciplinary hearing or disposition.  (<u>Id.</u>)  In

21  opposition, George contends that Defendant Calderon is a "part of

22  the disciplinary process" who helped cover up staff's gross

23  negligence.  ([Opp'n] Mem. P. & A. 9, ECF No. 26.)

24      Plaintiff's complaint is devoid of any specific allegations

25  of culpable action -- or inaction -- by Defendant Calderon.  "The

26  pleading standard Rule 8 announces does not require 'detailed

27  factual allegations,' but it demands more than an unadorned, the

28  defendant-unlawfully-harmed-me accusation."  <u>Iqbal</u>, 556 U.S. at

1  ___, 129 S. Ct. at 1949.  Thus, "[w]hile legal conclusions can

2  provide the framework of a complaint, they must be supported by

3  factual allegations.  When there are well-pleaded factual

4  allegations, a court should assume their veracity and then decide

5  whether they plausibly give rise to an entitlement to relief."

6  Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950.  "The plausibility

7  standard is not akin to a 'probability requirement,' but it asks

8  for more than a sheer possibility that defendant has acted

9  unlawfully."  Id. at 1949.

10      Generalized allegations that Defendant Calderon was part of

11  the disciplinary process are insufficient to state a claim against

12  him for violation of the Fourteenth Amendment.  Additionally,

13  because George has not alleged that Defendant Calderon was involved

14  in the inmate fight incident, he cannot state a claim for violation

15  of the Eighth Amendment against this Defendant.  The allegations in

16  the First Amended Complaint fail to state a claim against Defendant

17  Calderon for violation of the Eighth or the Fourteenth Amendments.

18  Accordingly, Defendant Calderon's Motion to Dismiss the claims

19  against him should be granted with leave to amend.

20  **D.   Civil Conspiracy**

21      "A plaintiff can state a conspiracy to violate civil rights

22  claim under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985."  Deadmon

23  v. Grannis, Case No. 06cv1382-LAB-WMC, 2008 WL 595883, at *12 (S.D.

24  Cal. Feb. 29, 2008) (citing Klingele v. Eikenberry, 849 F.2d 409,

25  413 (9th Cir. 1988)).  Section 1985 requires "an allegation of

26  racial or class-based discriminatory animus."  Klingele, 849 F.2d

27  at 413; see also RK Ventures, Inc. v. City of Seattle, 307 F.3d

28  1045, 1056 (9th Cir. 2002).

Here, it does not appear that § 1985 is applicable, because Plaintiff's Amended Complaint does not allege a racial or other discriminatory motive.  Plaintiff alleges that Defendants conspired to cover up actions by Defendants Valasquez and Alvarado which led to George being assaulted by inmates Whiting and Hayes.  (First Am. Compl. 9, ECF No. 5.)  George also contends that Defendant Lopez met with Defendant Hernandez and other staff to prepare a fraudulent report about the incident.  (Id. at 5.)

To prove a conspiracy in violation of § 1983, a plaintiff must show the following:  (1) an agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in furtherance of the conspiracy; and (3) a constitutional violation.  See Gilbrook v. City of Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999) (en banc); Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998).  The Ninth Circuit applies a heightened pleading standard to conspiracy claims under § 1983 and has held that mere conclusory allegations of conspiracy (i.e. a bare allegation that a defendant "conspired" with another) are insufficient to state a claim.  See Harris v. Roderick, 126 F.3d 1189, 1195 (9th Cir. 1997); Buckey v. Cnty. of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Woodrum v. Woodward Cnty., 866 F.2d 1121, 1126-27 (9th Cir. 1989).  Rather, "[t]o state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."  Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989); see also Lee v. City of Los Angeles, 250 F.3d 668, 679 n.6 (9th Cir. 2001) (holding that plaintiffs must allege facts which are "specific and concrete enough to enable the

defendants to prepare a response"); <u>Buckey</u>, 968 F.2d at 794.  A plaintiff can meet the heightened pleading standard by alleging "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights even though he does not identify which officer said or did what at which particular time." <u>Harris</u>, 126 F.3d at 1196.

Although Defendants' Motion to Dismiss acknowledges that Plaintiff attempts to plead a conspiracy, Defendants do not address this specific claim.  (Mot. Dismiss Attach. #1 Mem. P. & A. 11, ECF No. 23.)  Nonetheless, they move to dismiss the First Amended Complaint in its entirety.  (Notice Defs.' Mot. Dismiss 1, ECF No. 23.)  In opposing the Motion, George argues that (1) Defendants Farias and Carvajal conspired to cover up the inmate fight, and (2) Defendants Gutierrez and Valenzuela conspired by fabricating false charges against George of "willfully participating in a riot." ([Opp'n] Mem. P. & A. 2, 8, ECF No. 26.)

The allegations in the First Amended Complaint do not meet the heightened pleading requirements to allege a civil conspiracy required by <u>Harris v. Roderick</u>.  First, to the extent George contends that Defendants conspired to cover up the inmate fight, he does not allege how the Defendants conspired and how this conspiracy led to a constitutional deprivation.  In fact, Plaintiff acknowledges that the prison officials investigated the inmate fight.  (<u>See</u> First Am. Compl. Attach. #1 Ex. A, ECF No. 5.) Secondly, although George claims that the charges against him were fabricated, his rules violation report indicates that he pleaded guilty to the charge.  (<u>See</u> <u>id.</u> at 6.)  His conclusory allegations do not adequately establish a claim for civil conspiracy.

1  Accordingly, to the extent Plaintiff alleged a claim for civil

2  conspiracy, it should be dismissed with leave to amend.

3  **E.    Qualified Immunity**

4      Defendants argue that they are each entitled to qualified

5  immunity because they reasonably believed that their conduct was

6  lawful.  (Mot. Dismiss Attach. #1 Mem. P. & A. 9, ECF No. 23.)

7  Defendants contend that George has not adequately alleged any

8  constitutional claim against them, and "reasonable correctional

9  officials would not have believed that following established prison

10 policies violated Plaintiff's rights."  (<u>Id.</u> at 10.)

11     "Qualified immunity shields federal and state officials from

12 money damages unless a plaintiff pleads facts showing (1) that the

13 official violated a statutory or constitutional right, and (2) that

14 the right was 'clearly established' at the time of the challenged

15 conduct."  <u>Ashcroft v. Al-Kidd</u>, __ U.S. __, 131 S. Ct. 2074, 2080

16 (2011) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)); <u>see</u>

17 <u>also</u> <u>Hydrick v. Hunter</u>, 449 F.3d 978, 992 (9th Cir. 2006).  This

18 immunity protects "all but the plainly incompetent or those who

19 knowingly violate the law."  <u>Malley v. Briggs</u>, 475 U.S. 335, 341

20 (1986).

21     When considering a claim for qualified immunity, courts engage

22 in a two-part inquiry:  Do the facts show that the defendant

23 violated a constitutional right, and was the right clearly

24 established at the time of the defendant's purported misconduct?

25 <u>Delia v. City of Rialto</u>, 621 F.3d 1069, 1074 (9th Cir. 2010)

26 (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009)).  A right

27 is clearly established if its contours are so clear that a

28 reasonable official would understand his conduct was unlawful in

the situation he confronted.  <u>Dunn v. Castro</u>, 621 F.3d 1196, 1199-1200 (9th Cir. 2010) (citation omitted).  This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002) (citation omitted).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ."  <u>Id.</u>

"[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."  <u>Al-Kidd</u>, __ U.S. at __, 131 S. Ct. at 2080; <u>Pearson</u>, 555 U.S. at 236; <u>see also Delia</u>, 621 F.3d at 1075 (citing <u>Brooks v. Seattle</u>, 599 F.3d 1018, 1022 n.7 (9th Cir. 2010); <u>Bull v. City & County of San Francisco</u>, 595 F.3d 964, 971 (9th Cir. 2010)).  "If the Officers' actions do not amount to a constitutional violation, the violation was not clearly established, or their actions reflected a reasonable mistake about what the law requires, they are entitled to qualified immunity."  <u>Brooks</u>, 599 F.3d at 1022 (citing <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 471 (9th Cir. 2007)); <u>see James v. Rowlands</u>, 606 F.3d 646, 651 (9th Cir. 2010) (quoting <u>Pearson</u>, 555 U.S. at 232, 236).

Courts should generally attempt to resolve this threshold immunity question at the earliest possible stage in the litigation "before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"  <u>Al-Kidd</u>, __ U.S. at __, 131 S. Ct. at 2080 (quoting <u>Pearson</u>, 555 U.S. at 236-37); <u>see also Crawford-El v. Britton</u>, 523 U.S. 574, 598 (1998)

(noting that the purpose of resolving immunity issues early is so that officials are not subjected to unnecessary discovery); Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Here, the Court has recommended that George's causes of action against Defendants be dismissed with leave to amend. Therefore, any discussion of qualified immunity is premature until, and if, the Plaintiff amends his Complaint. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 793-94 (2nd Cir. 2002) (explaining that ruling on qualified immunity in the context of a Rule 12(b)(6) motion would be premature because the issue "turns on factual questions that cannot be resolved at this stage of the proceedings."); see also Harlow, 457 U.S. at 818 (stating that government officials are shielded from liability if their conduct does not violate a constitutional right that was clearly established); Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999) (concluding that in light of the fact that allegations in the complaint as accepted as true, dismissal under Rule 12(b)(6) on qualified immunity grounds was inappropriate). Consequently, Defendants' Motion to Dismiss based on qualified immunity should be **DENIED** without prejudice as premature.

**VI.   CONCLUSION**

The district court should GRANT Defendants' Motion to Dismiss Plaintiff's Eighth Amendment failure-to-protect and Fourteenth Amendment equal protection claims. Plaintiff's civil conspiracy claim should also be dismissed.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written

objections with the Court and serve a copy on all parties on or

before March 9, 2012.  The document should be captioned "Objections

to Report and Recommendation."  Any reply to the objections shall

be served and filed on or before March 16, 2012.  The parties are

advised that failure to file objections within the specified time

may waive the right to appeal the district court's order.  <u>Martinez</u>

<u>v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 17, 2012

Ruben B. Brooks
United States Magistrate Judge

cc:  Judge Sammartino
     All Parties of Record